USDC SCAN INDEX SHEET










```
TKL    12/23/04    15:14
3:04-CV-00326    LITE BREEZE INC V. SPEARS
*58*
*SUPPL.*
```

Peter J. Anderson, Esq., SBN 088891
LAW OFFICES OF PETER J. ANDERSON, A P.C.
100 Wilshire Boulevard, Suite 2010
Santa Monica, CA 90401

Tel: (310) 260-6030
Fax: (310) 260-6040

Attorney for Defendants BRITNEY SPEARS,
CLEAR CHANNEL ENTERTAINMENT
TELEVISION HOLDINGS, INC.,
SIGNATURES NETWORK, INC.,
ZOMBA RECORDING CORP. and
BRITNEY BRANDS, INC.

Bruce Isaacs, Esq. SBN 100926
WYMAN & ISAACS LLP
8840 Wilshire Blvd., Second Floor
Beverly Hills, CA 90211

Tel: (310) 358-3221
Fax: (310) 358-3224

Attorney for Defendant
ZOMBA RECORDING CORP.

FILED
DEC 22 2004
CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY                        DEPUTY

**NUNC PRO TUNC**

DEC 21 2004

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LITE BREEZE, INC., a California Corporation,<br><br>            Plaintiff,<br><br>    vs.<br><br>BRITNEY SPEARS, an individual; CLEAR CHANNEL ENTERTAINMENT TELEVISION HOLDINGS, INC., a Delaware Corporation; SIGNATURES NETWORK, INC., a California Corporation; ZOMBA RECORDING CORPORATION, dba JIVE RECORDS, a New York Corporation; BRITNEY BRANDS, INC., a Louisiana corporation; BRITNEY TOURING, INC., a Louisiana Corporation, and DOES 1-10,<br><br>            Defendants. | Case No. '04 CV 0326 DMS (JFS)<br><br>DEFENDANTS' SUPPLEMENTAL MEMORANDUM OF POINTS AND AUTHORITIES *RE* INTERVENING SUPREME COURT DECISION<br><br>Date: January 21, 2005<br>Time: 2:30 p.m.<br><br>Courtroom of the Honorable<br>Dana Sabraw<br>United States District Judge |

DEFENDANTS' SUPPLEMENTAL MEMORANDUM                                    04CV0326

## SUPPLEMENTAL MEMORANDUM OF POINTS AND AUTHORITIES

In this trademark case, plaintiff claims broad exclusive rights in the ubiquitous phrase "in the zone." Defendants' pending Motion for Summary Judgment or Partial Summary is brought on several grounds, including the "classic" fair use defense. Defendants' Memorandum in support of their Motion noted that the Supreme Court granted certiorari to review *KP Permanent Make-Up, Inc. v. Lasting Impression I, Inc.*, 328 F.3d 1061 (9th Cir. 2003), in which the Ninth Circuit required -- unlike the Second and other Circuits -- that a defendant asserting fair use also disprove a likelihood of confusion. Memo. filed 11/23/04 at 17, n. 12. Defendants submit this Supplemental Memorandum because the Supreme Court has now reversed *KP Permanent Make-Up* and the Supreme Court's decision provides additional compelling support for defendants' Motion.

In *KP Permanent Make-Up*, a copy of which is attached, the Supreme Court held that the burden of proving likelihood of confusion remains with the plaintiff and that a defendant raising the fair use defense has no obligation to show confusion unlikely. Attached copy at 5, 9. The Supreme Court also recognized that "some possibility of consumer confusion must be compatible with fair use," and otherwise someone could "obtain a complete monopoly on the use of a descriptive term simply by grabbing it first" and "deprive commercial speakers of the ordinary utility of descriptive words." *Id.* at 8. While "recogniz[ing] that mere risk of confusion will not rule out fair use," the Court left undecided whether a plaintiff's proof of a higher "degree" of confusion is irrelevant to fair use, as the Second and other Circuits have ruled, *id.* at 6, or is a "concern that courts might pick as relevant" to this defense. *Id.* at 9.

Here, if this Court determines that likelihood of confusion is irrelevant to the fair use defense, then no showing of confusion by plaintiff will defeat this ground of defendants' Motion.[1] If instead the Court determines that likelihood of confusion may be relevant in evaluating the fair use defense, then the Supreme Court's decision further supports

---

[1] Likelihood of confusion is not relevant at all to the Motion's alternate grounds that plaintiff cannot claim a trademark in an album title and that the First Amendment bars plaintiff's claims. *See* Memo. filed 11/23/04 at 11 & 12-16. Likelihood of confusion is, of course, relevant to the alternate ground that the evidence establishes as a matter of law that plaintiff cannot carry its burden of proving the probability of confusion required to establish its prima facie claims. *Id.* at 25.

1

DEFENDANTS' SUPPLEMENTAL MEMORANDUM                                      04CV0326

defendants' Motion because the burden is on plaintiff to prove likelihood of confusion. When defendants filed their Motion, the law in this Circuit required that to prove their fair use defense they affirmatively negate a likelihood of confusion. While defendants believe they clearly did so, now plaintiff bears the burden of proving "specific facts showing"[2] not only likelihood of confusion that exceeds the "mere risk of confusion," but a degree of such confusion that defeats the fair use defense and "deprive[s] commercial speakers of the ordinary utility of" the common phrase "in the zone."[3] For at least the reasons discussed in defendants' Motion, this is a burden plaintiff cannot carry. Memo. filed 11/23/04 at 19-24.

Respectfully submitted,

Dated: December 20, 2004

_____
Peter J. Anderson, Esq.
LAW OFFICES OF PETER J. ANDERSON
A Professional Corporation
Attorney for Defendants
BRITNEY SPEARS,
CLEAR CHANNEL ENTERTAINMENT
TELEVISION HOLDINGS, INC.,
SIGNATURES NETWORK, INC.,
ZOMBA RECORDING CORP. and
BRITNEY BRANDS, INC.

---

[2] *Celotex Corp. v. Catrett*, 477 U.S. 317, 324, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986) ["(W)here the nonmoving party will bear the burden of proof at trial on a dispositive issue, . . . Rule 56(e) . . . requires the nonmoving party to go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial'"], *quoting* Fed. R. Civ. P. 56(e).

[3] Both the Supreme Court's *KP Permanent Make-Up* decision and service of this Supplemental Memorandum occurred more than 28 days before the January 21, 2005 hearing on defendants' Motion and, as a result, plaintiff has sufficient notice of its burden of proof. Civ. L. Rule 7.1(e)(1).

2

DEFENDANTS' SUPPLEMENTAL MEMORANDUM                                04CV0326



2004 WL 2804921
--- S.Ct. ---
(Cite as: 2004 WL 2804921 (U.S.))

**H**
Briefs and Other Related Documents

Only the Westlaw citation is currently available.

Supreme Court of the United States

KP PERMANENT MAKE-UP, INC., Petitioner,
v.
LASTING IMPRESSION I, INC., et al.

No. 03-409.

Argued Oct. 5, 2004.
Decided Dec. 8, 2004.

**Background:** Permanent makeup manufacturer's competitor brought declaratory judgment action against manufacturer, alleging that manufacturer's registered "Micro Colors" mark was not entitled to protection, and manufacturer filed trademark infringement counterclaim. The United States District Court for the Central District of California, Gary L. Taylor, J., entered summary judgment in favor of competitor, and manufacturer appealed. The United States Court of Appeals for the Ninth Circuit, 328 F.3d 1061, reversed and remanded. Certiorari was granted.

**Holdings:** The Supreme Court, Justice Souter, held that:
(1) in asserting statutory affirmative defense of fair use to claim of trademark infringement, competitor had no burden to negate any likelihood that the practice complained of would confuse consumers about the origin of the goods or services affected, and
(2) some possibility of consumer confusion about the origin of the goods or services affected was compatible with fair use of a mark.
Vacated and remanded.

Justice Scalia joined in the opinion as to all but two footnotes.

Justice Breyer joined in the opinion as to all but one footnote.

[1] Trade Regulation ☞0
382k0 k.

Party asserting statutory affirmative defense of "fair use" to a claim of trademark infringement had no burden to negate any likelihood that the practice complained of would confuse consumers about the origin of the goods or services affected. Lanham Trade-Mark Act, § 33, as amended, 15 U.S.C.A. § 1115(b)(4).

[2] Trade Regulation ☞0
382k0 k.

Proof of trademark infringement claim requires a showing that the defendant's actual practice is likely to produce confusion in the minds of consumers about the origin of the goods or services in question, even when the plaintiff relies on an incontestable registration. Lanham Trade-Mark Act, § 33, as amended, 15 U.S.C.A. § 1115(b).

[3] Statutes ☞0
361k0 k.

Where Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion.

[4] Trade Regulation ☞0
382k0 k.

Some possibility of consumer confusion about the origin of the goods or services affected is compatible with "fair use" of a mark. Lanham Trade-Mark Act, § 33, as amended, 15 U.S.C.A. § 1115(b)(4).

Syllabus [FN*]

FN* The syllabus constitutes no part of the opinion of the Court but has been prepared by the Reporter of Decisions for the convenience of the reader. See United States v. Detroit Timber & Lumber Co., 200 U.S. 321, 337, 26 S.Ct. 282, 50 L.Ed. 499.

*1 Petitioner KP Permanent Make-Up, Inc., and respondents (collectively Lasting) all use the term "micro color" (as one word or two, singular or plural) in marketing permanent cosmetic makeup. The Court accepts KP's claim that it has used the single-word version since 1990 or 1991. In 1992, Lasting registered a trademark that included the words "Micro Colors" under 15 U.S.C. § 1051, and, in

Copr. © 2004 West. No Claim to Orig. U.S. Govt. Works.      3

2004 WL 2804921
--- S.Ct. ---
(Cite as: 2004 WL 2804921 (U.S.))

1999, the registration became incontestable, § 1065. When Lasting demanded that KP stop using the word "microcolor," KP sued for declaratory relief. Lasting counterclaimed, alleging, *inter alia*, that KP had infringed Lasting's trademark. KP responded by asserting the statutory affirmative defense of fair use, § 1115(b)(4). Finding that Lasting conceded that KP used "microcolor" only to describe its goods and not as a mark, the District Court held that KP was acting fairly and in good faith because KP undisputedly had employed the term continuously from before Lasting adopted its mark. Without enquiring whether the practice was likely to cause consumer confusion, the court concluded that KP had made out its affirmative defense under § 1115(b)(4) and entered summary judgment for KP on Lasting's infringement claim. Reversing, the Ninth Circuit ruled that the District Court erred in addressing the fair use defense without delving into the matter of possible consumer confusion about the origin of KP's goods. The court did not pointedly address the burden of proof, but appears to have placed it on KP to show the absence of such confusion.

*Held*: A party raising the statutory affirmative defense of fair use to a claim of trademark infringement does not have a burden to negate any likelihood that the practice complained of will confuse consumers about the origin of the goods or services affected. Pp. ---- - ----4-12.

(a) Although § 1115(b) makes an incontestable registration "conclusive evidence ... of the registrant's exclusive right to use the ... mark," it also subjects a plaintiff's success to "proof of infringement as defined in section 1114." Section § 1114(1) in turn requires a showing that the defendant's actual practice is "likely to cause confusion, or to cause mistake, or to deceive" consumers about the origin of the goods or services in question, see, *e.g.*, *Two Pesos, Inc. v. Taco Cabana, Inc.,* 505 U.S. 763, 780, 112 S.Ct. 2753, 120 L.Ed.2d 615. Thus, a plaintiff claiming infringement of an incontestable mark must show likelihood of consumer confusion as part of the prima facie case. This plaintiff's burden must be kept in mind when reading § 1115(b)(4), which provides the fair use defense to a party whose "use of the ... term ... charged to be an infringement is a use, otherwise than as a mark, ... of a term ... which is descriptive of and used fairly and in good faith only to describe the goods or services." It is evident (1) that § 1115(b) places a burden of proving likelihood of confusion (that is, infringement) on the party charging infringement even when relying on an incontestable registration, and (2) that Congress said nothing about likelihood of confusion in setting out the elements of the fair use defense in § 1115(b)(4). It therefore takes a long stretch to claim that a fair use defense entails any burden to negate confusion. It is not plausible that Congress would have used § 1114's phrase "likely to cause confusion, or to cause mistake, or to deceive" to describe the requirement that a markholder show likelihood of consumer confusion, but would have relied on § 1115(b)(4)'s phrase "used fairly" to give a defendant the burden to negate confusion. See, *e.g.*, *Russello v. United States,* 464 U.S. 16, 23, 104 S.Ct. 296, 78 L.Ed.2d 17. Congress's failure to say anything about a defendant's burden on this point was almost certainly not an oversight, since the House Trademarks Subcommittee refused to forward a proposal expressly providing likelihood to deceive the public as an element of the fair use defense. Lasting argues unpersuasively that "used fairly" in § 1115(b)(4) is an oblique incorporation of a likelihood-of-confusion test developed in the common law of unfair competition. While cases such as *Baglin v. Cusenier Co.,* 221 U.S. 580, 31 S.Ct. 669, 55 L.Ed. 863, are consistent with taking account of the likelihood of consumer confusion as one consideration in deciding whether a use is fair, they cannot be read to make an assessment of confusion alone dispositive or provide that the defense has a burden to negate it entirely. Finally, a look at the typical course of litigation in an infringement action points up the incoherence of placing a burden to show nonconfusion on a defendant. If a plaintiff succeeds in making out a prima facie case, including the element of likelihood of confusion, the defendant may offer rebutting evidence to undercut the force of the plaintiff's evidence on this element, or raise an affirmative defense to bar relief even if the prima facie case is sound, or do both. It would make no sense to give the defendant a defense of showing affirmatively that the plaintiff cannot succeed in proving some element (like confusion); all the defendant needs to do is to leave the factfinder unpersuaded that the plaintiff has carried its own burden on that point. Nor would it make sense to provide an affirmative defense of no confusion plus good faith, when merely rebutting the plaintiff's case on confusion would entitle the defendant to judgment, good faith or not. Pp. ---- - ----4-9.

(b) Since the burden of proving likelihood of confusion rests with the plaintiff, and the fair use defendant has no free-standing need to show confusion unlikely, the Court recognizes (contrary to the Ninth Circuit's view) that some possibility of consumer confusion is compatible with fair use. It

would be improvident to go further here, for deciding anything more would take the Court beyond the Ninth Circuit's consideration of the subject. Because the Court does not rule out the pertinence of the degree of consumer confusion under the fair use defense, it does not pass upon the Government's position that § 1115(b)(4)'s "used fairly" requirement demands only that the descriptive term describe the goods accurately. Accuracy has to be a consideration in assessing fair use, but the proceedings below have raised no occasion to evaluate other concerns that courts might pick as relevant--*e.g.*, commercial justification and the strength of the plaintiff's mark-- as to which the door is not closed. Pp. ---- - ----9-11.

*2 (c) This Court reads the Ninth Circuit as erroneously requiring KP to shoulder a burden on the confusion issue. P. ----11.

328 F.3d 1061, vacated and remanded.

SOUTER, J., delivered the opinion of the Court, in which REHNQUIST, C. J., and STEVENS, O'CONNOR, KENNEDY, THOMAS, and GINSBURG, JJ., joined, in which SCALIA, J., joined as to all but footnotes 4 and 5, and in which BREYER, J., joined as to all but footnote 6.

ON WRIT OF CERTIORARI TO THE UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

Michael Machat, Beverly Hills, CA, for petitioner.

Patricia A. Millett, for United States, as amicus curiae, by special leave of the Court supporting the petitioner.

Beth S. Brinkmann, Washington, DC, for respondents.

Michael Machat, Law Offices of Michael Machat, P.C., Beverly Hills, CA, Counsel of Record for the Petitioner.

Prof. J. Thomas McCarthy, Morrison & Foerster, LLP, San Francisco, CA, Charles C.H. Wu, Counsel of Record, Mark. H. Cheung, Wu & Cheung, LLP, Irvine, CA, Drew S. Days, III, Beth S. Brinkmann, Edward W. Gray, Jr., Seth M. Galanter, Morrison & Foerster, LLP, Washington, DC, Attorneys for Respondents.

Justice SOUTER delivered the opinion of the Court. [FN*]

> FN* Justice SCALIA joins all but footnotes 4 and 5 of this opinion. Justice BREYER joins all but footnote 6.

The question here is whether a party raising the statutory affirmative defense of fair use to a claim of trademark infringement, 15 U.S.C. § 1115(b)(4), has a burden to negate any likelihood that the practice complained of will confuse consumers about the origin of the goods or services affected. We hold it does not.

I

Each party to this case sells permanent makeup, a mixture of pigment and liquid for injection under the skin to camouflage injuries and modify nature's dispensations, and each has used some version of the term "micro color" (as one word or two, singular or plural) in marketing and selling its product. Petitioner KP Permanent Make-Up, Inc., claims to have used the single-word version since 1990 or 1991 on advertising flyers and since 1991 on pigment bottles. Respondents Lasting Impression I, Inc., and its licensee, MCN International, Inc. (Lasting, for simplicity), deny that KP began using the term that early, but we accept KP's allegation as true for present purposes; the District and Appeals Courts took it to be so, and the disputed facts do not matter to our resolution of the issue. [FN1] In 1992, Lasting applied to the United States Patent and Trademark Office (PTO) under 15 U.S.C. § 1051 for registration of a trademark consisting of the words "Micro Colors" in white letters separated by a green bar within a black square. [FN2] The PTO registered the mark to Lasting in 1993, and in 1999 the registration became incontestable. § 1065.

> FN1. We note that in its brief to the Court of Appeals, Lasting appears to have conceded KP's use of "microcolor" in the early 1990's. Appellants' Opening Brief in No. 01-56055 (CA9), p. 8.

> FN2. A trademark may be "any word, name, symbol, or device, or any combination thereof ... used by a person ... to identify and distinguish his or her goods ... from those manufactured and sold by others and to indicate the source of the goods, even if that source is unknown." 15 U.S.C. § 1127.

It was also in 1999 that KP produced a 10-page

2004 WL 2804921
--- S.Ct. ---
(Cite as: 2004 WL 2804921 (U.S.))

advertising brochure using "microcolor" in a large, stylized typeface, provoking Lasting to demand that KP stop using the term. Instead, KP sued Lasting in the Central District of California, seeking, on more than one ground, a declaratory judgment that its language infringed no such exclusive right as Lasting claimed. [FN3] Lasting counterclaimed, alleging, among other things, that KP had infringed Lasting's "Micro Colors" trademark.

> FN3. We summarize the proceedings in this litigation only as they are relevant to the question before us. The District Court's findings as to the generic or descriptive nature of the term "micro color" and any secondary meaning that term has acquired by any of the parties, see SA CV 00-276-GLT (EEx) (CD Cal. May 16, 2001), pp. 3-5, 5-8, are not before us. Nor are the Court of Appeals's holdings on these issues. See 328 F.3d 1061, 1068- 1071 (C.A.9 2003). Nor do we address the Court of Appeals's discussion of "nominative fair use." *Id.*, at 1071-1072.

*3 KP sought summary judgment on the infringement counterclaim, based on the statutory affirmative defense of fair use, 15 U.S.C. § 1115(b)(4). After finding that Lasting had conceded that KP used the term only to describe its goods and not as a mark, the District Court held that KP was acting fairly and in good faith because undisputed facts showed that KP had employed the term "microcolor" continuously from a time before Lasting adopted the two-word, plural variant as a mark. Without enquiring whether the practice was likely to cause confusion, the court concluded that KP had made out its affirmative defense under § 1115(b)(4) and entered summary judgment for KP on Lasting's infringement claim. See SA CV 00-276-GLT (EEx), (May 16, 2001), pp. 8-9, App. to Cert. 29a-30a.

On appeal, 328 F.3d 1061 (2003), the Court of Appeals for the Ninth Circuit thought it was error for the District Court to have addressed the fair use defense without delving into the matter of possible confusion on the part of consumers about the origin of KP's goods. The reviewing court took the view that no use could be recognized as fair where any consumer confusion was probable, and although the court did not pointedly address the burden of proof, it appears to have placed it on KP to show absence of consumer confusion. *Id.*, at 1072 ("Therefore, KP can only benefit from the fair use defense if there is no likelihood of confusion between KP's use of the term 'micro color' and Lasting's mark"). Since it found there were disputed material facts relevant under the Circuit's eight-factor test for assessing the likelihood of confusion, it reversed the summary judgment and remanded the case.

We granted KP's petition for certiorari, 540 U.S. 1099 (2004), to address a disagreement among the Courts of Appeals on the significance of likely confusion for a fair use defense to a trademark infringement claim, and the obligation of a party defending on that ground to show that its use is unlikely to cause consumer confusion. Compare 328 F.3d, at 1072 (likelihood of confusion bars the fair use defense); *PACCAR Inc. v. TeleScan Technologies, L.L. C.*, 319 F.3d 243, 256 (C.A.6 2003) ("[A] finding of a likelihood of confusion forecloses a fair use defense"); and *Zatarains, Inc. v. Oak Grove Smokehouse*, 698 F.2d 786, 796 (C.A.5 1983) (alleged infringers were free to use words contained in a trademark "in their ordinary, descriptive sense, so long as such use [did] not tend to confuse customers as to the source of the goods"), with *Cosmetically Sealed Industries, Inc. v. Chesebrough-Pond's USA Co.*, 125 F.3d 28, 30-31 (C.A.2 1997) (the fair use defense may succeed even if there is likelihood of confusion); *Shakespeare Co. v. Silstar Corp. of Am.*, 110 F.3d 234, 243 (C.A.4 1997) ("[A] determination of likely confusion [does not] preclud[e] considering the fairness of use"); *Sunmark, Inc. v. Ocean Spray Cranberries, Inc.*, 64 F.3d 1055, 1059 (C.A.7 1995) (finding that likelihood of confusion did not preclude the fair use defense). We now vacate the judgment of the Court of Appeals.

II
A

*4 [1] The Trademark Act of 1946, known for its principal proponent as the Lanham Act, 60 Stat. 427, as amended, 15 U.S.C. § 1051 *et seq.*, provides the user of a trade or service mark with the opportunity to register it with the PTO, § § 1051, 1053. If the registrant then satisfies further conditions including continuous use for five consecutive years, "the right ... to use such registered mark in commerce" to designate the origin of the goods specified in the registration "shall be incontestable" outside certain listed exceptions. § 1065.

[2] The holder of a registered mark (incontestable or not) has a civil action against anyone employing an imitation of it in commerce when "such use is likely to cause confusion, or to cause mistake, or to

2004 WL 2804921
--- S.Ct. ---
(Cite as: 2004 WL 2804921 (U.S.))

deceive." § 1114(1). Although an incontestable registration is "conclusive evidence ... of the registrant's exclusive right to use the ... mark in commerce," § 1115(b), the plaintiff's success is still subject to "proof of infringement as defined in section 1114," § 1115(b). And that, as just noted, requires a showing that the defendant's actual practice is likely to produce confusion in the minds of consumers about the origin of the goods or services in question. See *Two Pesos, Inc. v. Taco Cabana, Inc.,* 505 U.S. 763, 780, 112 S.Ct. 2753, 120 L.Ed.2d 615 (1992) (STEVENS, J., concurring); *Lone Star Steakhouse and Saloon, Inc. v. Alpha of Virginia, Inc.,* 43 F.3d 922, 935 (C.A.4 1995); Restatement (Third) of Unfair Competition § 21, Comment *a* (1995). This plaintiff's burden has to be kept in mind when reading the relevant portion of the further provision for an affirmative defense of fair use, available to a party whose

> "use of the name, term, or device charged to be an infringement is a use, otherwise than as a mark, ... of a term or device which is descriptive of and used fairly and in good faith only to describe the goods or services of such party, or their geographic origin ...." § 1115(b)(4).

Two points are evident. Section 1115(b) places a burden of proving likelihood of confusion (that is, infringement) on the party charging infringement even when relying on an incontestable registration. And Congress said nothing about likelihood of confusion in setting out the elements of the fair use defense in § 1115(b)(4).

[3] Starting from these textual fixed points, it takes a long stretch to claim that a defense of fair use entails any burden to negate confusion. It is just not plausible that Congress would have used the descriptive phrase "likely to cause confusion, or to cause mistake, or to deceive" in § 1114 to describe the requirement that a markholder show likelihood of consumer confusion, but would have relied on the phrase "used fairly" in § 1115(b)(4) in a fit of terse drafting meant to place a defendant under a burden to negate confusion. " '[W]here Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion.' " *Russello v. United States,* 464 U.S. 16, 23, 104 S.Ct. 296, 78 L.Ed.2d 17 (1983) (quoting *United States v. Wong Kim Bo,* 472 F.2d 720, 722 (C.A.5 1972)) (alteration in original). [FN4]

> FN4. Not only that, but the failure to say anything about a defendant's burden on this point was almost certainly not an oversight, not after the House Subcommittee on Trademarks declined to forward a proposal to provide expressly as an element of the defense that a descriptive use be " '[un]likely to deceive the public.' " Hearings on H.R. 102 et al. before the Subcommittee on Trade-Marks of the House Committee on Patents, 77th Cong., 1st Sess., 167-168 (1941) (hereinafter Hearings) (testimony of Prof. Milton Handler).

Nor do we find much force in Lasting's suggestion that "used fairly" in § 1115(b)(4) is an oblique incorporation of a likelihood-of-confusion test developed in the common law of unfair competition. Lasting is certainly correct that some unfair competition cases would stress that use of a term by another in conducting its trade went too far in sowing confusion, and would either enjoin the use or order the defendant to include a disclaimer. See, *e.g., Baglin v. Cusenier Co.,* 221 U.S. 580, 602, 31 S.Ct. 669, 55 L.Ed. 863 (1911) ("[W]e are unable to escape the conclusion that such use, in the manner shown, was to serve the purpose of simulation ..."); *Herring-Hall-Marvin Safe Co. v. Hall's Safe Co.,* 208 U.S. 554, 559, 28 S.Ct. 350, 52 L.Ed. 616 (1908) ("[T]he rights of the two parties have been reconciled by allowing the use, provided that an explanation is attached"). But the common law of unfair competition also tolerated some degree of confusion from a descriptive use of words contained in another person's trademark. See, *e.g., William R. Warner & Co. v. Eli Lilly & Co.,* 265 U.S. 526, 528, 44 S.Ct. 615, 68 L.Ed. 1161 (1924) (as to plaintiff's trademark claim, "[t]he use of a similar name by another to truthfully describe his own product does not constitute a legal or moral wrong, even if its effect be to cause the public to mistake the origin or ownership of the product"); *Canal Co. v. Clark,* 13 Wall. 311, 327, 20 L.Ed. 581 (1872) ("Purchasers may be mistaken, but they are not deceived by false representations, and equity will not enjoin against telling the truth"); see also 3 L. Altman, Callmann on Unfair Competition, Trademarks and Monopolies § 18:2, pp. 18-8 to 18-9, n. 1 (4th ed.2004) (citing cases). While these cases are consistent with taking account of the likelihood of consumer confusion as one consideration in deciding whether a use is fair, see Part II-B, *infra,* they do not stand for the proposition that an assessment of confusion alone may be dispositive. Certainly one cannot get out of them any defense burden to negate it entirely.

2004 WL 2804921
--- S.Ct. ---
(Cite as: 2004 WL 2804921 (U.S.))

*5 Finally, a look at the typical course of litigation in an infringement action points up the incoherence of placing a burden to show nonconfusion on a defendant. If a plaintiff succeeds in making out a prima facie case of trademark infringement, including the element of likelihood of consumer confusion, the defendant may offer rebutting evidence to undercut the force of the plaintiff's evidence on this (or any) element, or raise an affirmative defense to bar relief even if the prima facie case is sound, or do both. But it would make no sense to give the defendant a defense of showing affirmatively that the plaintiff cannot succeed in proving some element (like confusion); all the defendant needs to do is to leave the factfinder unpersuaded that the plaintiff has carried its own burden on that point. A defendant has no need of a court's true belief when agnosticism will do. Put another way, it is only when a plaintiff has shown likely confusion by a preponderance of the evidence that a defendant could have any need of an affirmative defense, but under Lasting's theory the defense would be foreclosed in such a case. "[I]t defies logic to argue that a defense may not be asserted in the only situation where it even becomes relevant." *Shakespeare Co. v. Silstar Corp.*, 110 F.3d, at 243. Nor would it make sense to provide an affirmative defense of no confusion plus good faith, when merely rebutting the plaintiff's case on confusion would entitle the defendant to judgment, good faith or not.

Lasting tries to extenuate the anomaly of this conception of the affirmative defense by arguing that the oddity reflects the "vestigial" character of the fair use defense as a historical matter. Tr. of Oral Arg. 39. Lasting argues that, because it was only in 1988 that Congress added the express provision that an incontestable markholder's right to exclude is "subject to proof of infringement," Trademark Law Revision Act of 1988, § 128(b)(1), 102 Stat. 3944, there was no requirement prior to 1988 that a markholder prove likelihood of confusion. Before 1988, the argument goes, it was sensible to get at the issue of likely confusion by requiring a defendant to prove its absence when defending on the ground of fair use. When the 1988 Act saddled the markholder with the obligation to prove confusion likely, § 1115(b), the revision simply failed to relieve the fair use defendant of the suddenly strange burden to prove absence of the very confusion that a plaintiff had a new burden to show in the first place.

*6 But the explanation does not work. It is not merely that it would be highly suspect in leaving the claimed element of § 1115(b)(4) redundant and pointless. *Hibbs v. Winn*, 542 U.S. ----, ----, (2004) (slip op., at 10) (noting "rule against superfluities" in statutory construction). The main problem of the argument is its false premise: Lasting's assumption that holders of incontestable marks had no need to prove likelihood of confusion prior to 1988 is wrong. See, e.g., *Beer Nuts, Inc. v. Clover Club Foods Co.*, 805 F.2d 920, 924-925 (C.A.10 1986) (requiring proof of likelihood of confusion in action by holder of incontestable mark); *United States Jaycees v. Philadelphia Jaycees*, 639 F.2d 134, 137, n. 3 (C.A.3 1981) ("[I]ncontestability [does not] mak[e] unnecessary a showing of likelihood of confusion ..."); 5 J. McCarthy, Trademarks and Unfair Competition § 32:154, p. 32-247 (4th ed. 2004) ("Before the 1988 Trademark Law Revision Act, the majority of courts held that while incontestability grants a conclusive presumption of the 'exclusive right to use' the registered mark, this did not relieve the registrant of proving likelihood of confusion").

B

[4] Since the burden of proving likelihood of confusion rests with the plaintiff, and the fair use defendant has no free-standing need to show confusion unlikely, it follows (contrary to the Court of Appeals's view) that some possibility of consumer confusion must be compatible with fair use, and so it is. The common law's tolerance of a certain degree of confusion on the part of consumers followed from the very fact that in cases like this one an originally descriptive term was selected to be used as a mark, not to mention the undesirability of allowing anyone to obtain a complete monopoly on use of a descriptive term simply by grabbing it first. *Canal Co. v. Clark*, supra, at 323-324, 327. The Lanham Act adopts a similar leniency, there being no indication that the statute was meant to deprive commercial speakers of the ordinary utility of descriptive words. "If any confusion results, that is a risk the plaintiff accepted when it decided to identify its product with a mark that uses a well known descriptive phrase." *Cosmetically Sealed Industries, Inc. v. Chesebrough-Pond's USA Co.*, 125 F.3d, at 30. See also *Park 'N Fly, Inc. v. Dollar Park & Fly, Inc.*, 469 U.S. 189, 201, 105 S.Ct. 658, 83 L.Ed.2d 582 (1985) (noting safeguards in Lanham Act to prevent commercial monopolization of language); *Car-Freshner Corp. v. S.C. Johnson & Son, Inc.*, 70 F.3d 267, 269 (C.A.2 1995) (noting importance of "protect[ing] the right of society at large to use words or images in their primary descriptive sense"). [FN5] This right to describe is the reason that descriptive terms qualify for registration as trademarks only after

2004 WL 2804921
--- S.Ct. ---
(Cite as: 2004 WL 2804921 (U.S.))

taking on secondary meaning as "distinctive of the applicant's goods," 15 U.S.C. § 1052(f), with the registrant getting an exclusive right not in the original, descriptive sense, but only in the secondary one associated with the markholder's goods, 2 McCarthy, *supra*, § 11:45 ("The only aspect of the mark which is given legal protection is that penumbra or fringe of secondary meaning which surrounds the old descriptive word").

> FN5. See also Hearings 72 (testimony of Wallace Martin, Chairman, American Bar Association Committee on Trade-Mark Legislation) ("Everybody has got a right to the use of the English language and has got a right to assume that nobody is going to take that English language away from him").

While we thus recognize that mere risk of confusion will not rule out fair use, we think it would be improvident to go further in this case, for deciding anything more would take us beyond the Ninth Circuit's consideration of the subject. It suffices to realize that our holding that fair use can occur along with some degree of confusion does not foreclose the relevance of the extent of any likely consumer confusion in assessing whether a defendant's use is objectively fair. Two Courts of Appeals have found it relevant to consider such scope, and commentators and *amici* here have urged us to say that the degree of likely consumer confusion bears not only on the fairness of using a term, but even on the further question whether an originally descriptive term has become so identified as a mark that a defendant's use of it cannot realistically be called descriptive. See *Shakespeare Co. v. Silstar Corp., supra,* at 243 ("[T]o the degree that confusion is likely, a use is less likely to be found fair ..." (emphasis omitted)); *Sunmark, Inc. v. Ocean Spray Cranberries, Inc.,* 64 F.3d, at 1059; Restatement (Third) of Unfair Competition, § 28; Brief for American Intellectual Property Law Association as *Amicus Curiae* 13- 18; Brief for Private Label Manufacturers Association as *Amicus Curiae* 16-17; Brief for Society of Permanent Cosmetic Professionals et al. as *Amici Curiae* 8- 11.

*7 Since we do not rule out the pertinence of the degree of consumer confusion under the fair use defense, we likewise do not pass upon the position of the United States, as *amicus*, that the "used fairly" requirement in § 1115(b)(4) demands only that the descriptive term describe the goods accurately. Tr. of Oral Arg. 17. Accuracy of course has to be a consideration in assessing fair use, but the proceedings in this case so far raise no occasion to evaluate some other concerns that courts might pick as relevant, quite apart from attention to confusion. The Restatement raises possibilities like commercial justification and the strength of the plaintiff's mark. Restatement § 28. As to them, it is enough to say here that the door is not closed.

III

In sum, a plaintiff claiming infringement of an incontestable mark must show likelihood of consumer confusion as part of the prima facie case, 15 U.S.C. § 1115(b), while the defendant has no independent burden to negate the likelihood of any confusion in raising the affirmative defense that a term is used descriptively, not as a mark, fairly, and in good faith, § 1115(b)(4).

Because we read the Court of Appeals as requiring KP to shoulder a burden on the issue of confusion, we vacate the judgment and remand the case for further proceedings consistent with this opinion. [FN6]

> FN6. The record indicates that on remand the courts should direct their attention in particular to certain factual issues bearing on the fair use defense, properly applied. The District Court said that Lasting's motion for summary adjudication conceded that KP used "microcolor" descriptively and not as a mark. SA CV 00-276-GLT (EEx) at 8, App. to Pet. for Cert. 29a. We think it is arguable that Lasting made those concessions only as to KP's use of "microcolor" on bottles and flyers in the early 1990s, not as to the stylized version of "microcolor" that appeared in KP's 1999 brochure. See Opposition to Motion for Summary Judgment in SA CV 00- 276-GLT (EEx) (CD Cal.), pp. 18-19; Appellants' Opening Brief in No. 01- 56055(CA9), pp. 31-2. We also note that the fair use analysis of KP's employment of the stylized version of "microcolor" on its brochure may differ from that of its use of the term on the bottles and flyers.

*It is so ordered.*

2004 WL 2804921 (U.S.)

END OF DOCUMENT

# CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing document was this date served upon all counsel of record by placing a copy of the same in the United States Mail, postage prepaid, and sent to counsel's last known address as follows:

Kathleen M. Walker, Esq.
Attorney at Law
3421 Thorn Street
San Diego, CA 92104

Santa Monica, California, on December 20, 2004.

_____
Peter J. Anderson, Esq.
LAW OFFICES OF PETER J. ANDERSON
A Professional Corporation
Attorney for Defendants
BRITNEY SPEARS,
CLEAR CHANNEL ENTERTAINMENT
TELEVISION HOLDINGS, INC.,
SIGNATURES NETWORK, INC.,
ZOMBA RECORDING CORPORATION and
BRITNEY BRANDS, INC.

DEFENDANTS' SUPPLEMENTAL MEMORANDUM                                04CV0326