

KAJ    12/27/04    9:25
3:04-CV-00326   LITE BREEZE INC V. SPEARS
*60*
*STMTFACTS.*

# ● ORIGINAL ●

1  Peter J. Anderson, Esq., SBN 088891
   LAW OFFICES OF PETER J. ANDERSON, A P.C.
2  100 Wilshire Boulevard, Suite 2010
   Santa Monica, CA 90401

3
   Tel: (310) 260-6030
4  Fax: (310) 260-6040

5  Attorney for Defendants BRITNEY SPEARS,
   CLEAR CHANNEL ENTERTAINMENT
6  TELEVISION HOLDINGS, INC.,
   SIGNATURES NETWORK, INC.,
7  ZOMBA RECORDING CORP. and
   BRITNEY BRANDS, INC.

8
   Bruce Isaacs, Esq. SBN 100926
9  WYMAN & ISAACS LLP
   8840 Wilshire Blvd., Second Floor
10 Beverly Hills, CA  90211

11 Tel: (310) 358-3221
   Fax:  (310) 358-3224
12
   Attorney for Defendant
13 ZOMBA RECORDING CORP.

```
                        FILED

                      DEC 2 3 2004

              CLERK, U.S. DISTRICT COURT
              SOUTHERN DISTRICT OF CALIFORNIA
              BY                    DEPUTY
```

14              UNITED STATES DISTRICT COURT

15             SOUTHERN DISTRICT OF CALIFORNIA

16 | LITE BREEZE, INC., a California | ) Case No. '04 CV 0326 DMS (JFS)
   | Corporation, | )
17 |  | ) CORRECTED SEPARATE
   |              Plaintiff, | ) STATEMENT OF MATERIAL FACTS
18 |  | ) IN SUPPORT OF DEFENDANTS'
   |       vs. | ) MOTION FOR SUMMARY
19 |  | ) JUDGMENT OR PARTIAL SUMMARY
   | BRITNEY SPEARS, an individual; CLEAR | ) JUDGMENT
20 | CHANNEL ENTERTAINMENT | )
   | TELEVISION HOLDINGS, INC., a Delaware ) Date: January 21, 2005
21 | Corporation; SIGNATURES NETWORK, | ) Time: 2:30 p.m.
   | INC., a California Corporation; ZOMBA | )
22 | RECORDING CORPORATION, dba JIVE | )     Courtroom of the Honorable
   | RECORDS, a New York Corporation; | )        Dana M. Sabraw
23 | BRITNEY BRANDS, INC., a Louisiana | )     United States District Judge
   | Corporation, and DOES 1-10, | )
24 |  | )
   |              Defendants. | )
25 |  | )
   |  | )
26

27

28

CORRECTED SEPARATE STATEMENT OF MATERIAL FACTS          04CV0326



# TABLE OF CONTENTS

SEPARATE STATEMENT OF MATERIAL FACTS..............................................1

1. "IN THE ZONE" IS A COMMON PHRASE THAT HAS BEEN USED AND REGISTERED AS A MARK BY MANY DIFFERENT PEOPLE IN A VARIETY OF CONTEXTS.........................................................................1

2. PLAINTIFF'S NARROW NICHE OF $3 CUSTOM-PRINTED T-SHIRTS FOR SPORTS TEAMS AND SPECIAL EVENTS...............................................5

3. THE FACTS BEHIND PLAINTIFF'S ALLEGATION OF USE OF ITS MARK FOR LIVE PERFORMANCES AND RECORDS.................................................7

   (a) Plaintiff's Supply Of Custom Printed T-Shirts To Organizers Of Special Events Where Music Is Played.......................................................7

   (b) Plaintiff's "Financial Involvement" In The Mid-1990's In "The Zone," Which Sometimes Offered Live Nighttime Musical Entertainment.......................9

   (c) Plaintiff's Recent Discovery That Its Salesman Had Given Away A Homemade CD That Refers To Plaintiff's Trademark For Athletic Clothing.................9

4. THE BRITNEY SPEARS ALBUM, CONCERT TOUR AND FAN T-SHIRT........11

   (a) Titling The Album "Britney Spears In The Zone".................................11

   (b) The Britney Spears Onyx Hotel Tour, Initially Referred To As "The "Britney Spears In the Zone Tour 2004".......................................................14

   (c) The Britney Spears "Britney In the Zone" Fan T-Shirt...........................17

i

CORRECTED SEPARATE STATEMENT OF MATERIAL FACTS      04CV0326

## SEPARATE STATEMENT OF MATERIAL FACTS

Pursuant to this Court's Local Civil Rule 7.1(f)(1), defendants Britney Spears, Clear Channel Entertainment Television Holdings, Inc. ("Clear Channel"), Signatures Network, Inc. ("Signatures"), Zomba Recording Corp. ("Zomba") and Britney Brands, Inc. ("BBI") respectfully submit this Separate Statement of Material Facts in connection with defendants' Motion for Summary Judgment or Partial Summary Judgment.

I. **"IN THE ZONE" IS A COMMON PHRASE THAT HAS BEEN USED AND REGISTERED AS A MARK BY MANY DIFFERENT PEOPLE IN A VARIETY OF CONTEXTS.**

1. The phrase "in the zone" is a common phrase that, as plaintiff's sole officer and shareholder defines it, "means a higher level of performance that is almost subconscious, that happens at a moment in time when body, mind and soul become one." Rodd Gardner Depo. at 32, lines 17-22[1]; Anderson Decl. at 2-3, ¶ 6, & at 3-4, ¶ 7; *see, also,* Spears Decl. at 2, lines 22-23; Sassoon Decl. at 2, lines 27-28.

2. The phrase "in the zone" was used in the sense of an exceptional, focused personal effort as early as 1969. Gardner Depo. at 30, line 19, to 31, line 16; Anderson Decl. at 3, lines 14-24.

3. The phrase "in the zone" is used not only in sports, where plaintiff's sole officer and shareholder admits having heard it used "possibly hundreds" of times, but in a wide variety of contexts and is part of the English idiom. Gardner Depo. at 32, lines 3-8; Anderson Decl. at 4, lines 1-5, at 30-31, ¶¶ 36-40; Ex. 49-52.

---

[1] Cited portions of the Gardner Deposition are reproduced in and attached to the Declaration of Peter J. Anderson filed with defendants' Motion.

1

1     4.     "In the zone" has also been used extensively in titles and, for example:

2        (a)     "In the Zone" is the title of at least the following record albums:

3            (1)     In the Zone, released in 1995 and featuring Emmett North, Jr.;

4            (2)     In the Zone, released in 1996 and featuring Wayman Tisdale;

5            (3)     In the Zone, released in 1996 and featuring Bill Hanff;

6            (4)     In the Zone, released in 1996 and featuring Ivy Queen;

7            (5)     In the Zone, released in 1996 and featuring Finger Roll;

8            (6)     In the Zone, released in 2002 and featuring the Capricorns;

9        (b)     "In the Zone" or similar phrases are in the titles of at least the following

10 additional albums:

11            (1)     In the Heath Zone, released in 1997 and featuring Tony Purrone;

12            (2)     Livin' in the Zone, released in 2001 and featuring Lesette Wilson;

13            (3)     In the Dub Zone, released in 2003 and featuring Ja Man;

14            (4)     Chalk Zone: In the Zone, released in 2003 and featuring songs

15 from the Nickelodeon television series Chalk Zone;

16        (c)     In the Zone is the title or in the title of at least 35 different songs that

17 have been registered with the performing rights societies ASCAP and BMI;

18        (d)     In the Zone is the title of a Fox Broadcasting Co. television show;

19        (e)     In the Zone is the title of a series of NBA-endorsed videogames for

20 Nintendo and Playstation, first released in 1996;

21        (f)     In the Zone, subtitled Transcendent Experience in Sports, is the title of a

22 book by Michael Murphy and Rhea A. White (1995); and

23        (g)     Playing in the Zone: Exploring the Spiritual Dimensions of Sports, is the

24 title of a book by Andrew Cooper (1998).

25 Anderson Decl. at 31-34, ¶¶ 41-49; Ex. 53-62.

26 ///

27 ///

28 ///

5.      There are at least the following 8 federal trademark registrations for the mark "In The Zone":

(a)      Plaintiff's 1992-93 registrations of "In The Zone" for sportswear, specifically t-shirts, sweatshirts, sweatpants, shorts and tanktops, first used in 1992;

(b)      Konami Corp.'s 1997 registration of "In The Zone" for computer game programs, video games and video game instructional materials, first used in 1995;

(c)      Fox Sports Productions, Inc.'s 1998 registration of "In The Zone" for on-line computer services providing information and multimedia presentations over a global network featuring sports and entertainment, first used in 1996;

(d)      Fox Sports Productions, Inc.'s 2000 registration of "In The Zone" for entertainment services in the nature of television programs, first used in 1996;

(e)      Lifetime Products, Inc.'s 2001 registration of "In The Zone" for portable basketball standards, first used in commerce in 1998;

(f)      Two Brothers I, Inc.'s 2002 registration of "In The Zone" for retail convenience stores and gasoline supply services, first used in 1997; and

(g)      Rehage Entertainment, Inc.'s 2003 registration of In The Zone" for sports festival services, namely conducting flag football festivals, first used in 1994.

Anderson Decl. at 4, ¶ 8, & at 34-35, ¶¶ 50-55; Ex. 17-18, 63-68.

6.      There are also many federal trademarks registrations of marks that include or are similar to "in the zone," such as:

(a)      "Get In The Zone" for nutritional supplements, first used in 1995 and registered by Performance Zone Fitness & Nutrition, Inc. in 1996;

(b)      "Fox Sports In The Zone" for entertainment services in the nature of television programs, first used in 1996 and registered by Fox Sports Productions, Inc. and Twentieth Century Fox Film Corp. in 2000;

(c)      "In The Zone Selling" for automobile dealer salesman training services, first used in 1997 and registered by Half-A-Car Co., Inc. in 2000;

3

1    (d)    "We're In the Zone" for the generation and for the transmission and
2    distribution of electricity to retail and wholesale customers, first used in 2001 and
3    registered by Mirant Corporation in 2002;

4    (e)    "Get In The Zone" for restaurants, first used in 1999 and registered by
5    Zones, Inc. in 2002;

6    (f)    "Get In The Zone" for retail auto parts stores, first used in 2001 and
7    registered by Speedbar, Inc. in 2002;

8    (g)    "Living In The Zone" for fitness and nutrition seminars, first used in
9    1999 and registered by Douglas Markham in 2000;

10    (h)    "Marketing In The Zone" for marketing consulting, first used in 1996
11    and registered by PreVision Marketing, LLC in 2002;

12    (i)    "Investing In The Zone" for financial analysis, planning, forecasting and
13    consulting, first used in 2003 and registered by Dana Craig in 2004;

14    (j)    "Play In The Safety Zone" for synthetic turf systems, first used in 2003
15    and registered by Southwest Recreational Industries, Inc. in 2004;

16    (k)    "Get In The Know Zone" for pre-recorded CD-ROMs for distributors of
17    pumps and related equipment, first used in 2000 and registered by Ingersoll-Rand
18    Corp. in 2003;

19    (l)    "In The Graybar Zone" for newsletters regarding electrical,
20    communication and data products, first used in 1999 and registered by Graybar
21    Services, Inc. in 2001;

22    (m)    "In The Graybar Zone" for wholesale distribution of electrical,
23    communication and data products, first used in 1999 and registered by Graybar
24    Services, Inc. in 2002;

25    (n)    "Into The Genius Zone" for educational materials kits including
26    prerecorded audio and video cassettes, first used in 1998 and registered by Ed Strachar
27    in 2000;

28    ///

CORRECTED SEPARATE STATEMENT OF MATERIAL FACTS          04CV0326

1       (o)   "ESPN Zone" for a chain of bars and restaurants, first used in 1997 and

2  registered by ESPN, Inc. in 1999; and

3       (p)   "ESPN Zone" for entertainment services, namely a sports-oriented

4  entertainment complex, first used in 1997 and registered by ESPN, Inc. in 2000.

5  Anderson Decl. at 35-37, ¶¶ 56-71; Ex. 69-84.

6

7       7.    In California alone at least 13 different people or companies have filed fictitious

8  business name statements for the use of "in the zone" as a business name and at least 22

9  different people have filed fictitious business name statements for the use of business names

10  that include or are similar to "in the zone." Anderson Decl. at 37-38, ¶ 72; Ex. 85.

11

12  2.    <u>PLAINTIFF'S NARROW NICHE OF $3 CUSTOM-PRINTED T-SHIRTS FOR</u>

13       <u>SPORTS TEAMS AND SPECIAL EVENTS.</u>

14

15       8.    Plaintiff is a California corporation formed in 1989. Anderson Decl., Ex. 45.

16

17       9.    Plaintiff is, and always has been, solely owned by Rodd Garner, who is also

18  plaintiff's sole officer. Gardner Depo. at 7, line 17, to 8, line 13; Anderson Decl. at 2-3, ¶ 6.

19

20       10.    Since 1992, plaintiff has used "in the zone" in connection with its business of

21  supplying low-cost custom-printed athletic clothing and sporting team uniforms such as t-

22  shirts, sweatshirts and sweatpants, that plaintiff supplies to athletic team coaches and to hosts

23  of special events, such as marathons, 5k and cycling races and the Old Mission Beach

24  Athletic Club's Over the Line beach softball tournaments. Gardner Depo. at 10, line 21, to

25  11, line 3, & at 13, line 18, to 15, line 10; Anderson Decl. at 4-6, ¶¶ 8-9.

26  ///

27  ///

28  ///

CORRECTED SEPARATE STATEMENT OF MATERIAL FACTS         04CV0326

11. Plaintiff's Mr. Gardner chose to use "in the zone" on plaintiff's sportswear to describe a higher level of performance. Gardner Depo. at 32, lines 3-8, & line 17 to 33, line 4Anderson Decl. at 4, lines 11-16.

12. In 1993 plaintiff applied for a federal registration of "in the zone" for "sportswear, namely shorts, t-shirts, tanktops, sweatshirts and sweatpants." That application was published for opposition in 2001 and registration granted on October 2, 2001, as number 2,493,712. Ex. 17.

13. In 1997, plaintiff obtained by assignment another's pending federal registration of "in the zone" for "clothing, specifically t-shirts and sweatshirts." That application was also published for opposition in 2001 and registration granted August 21, 2001, as number 2,478,730. Ex. 18.

14. In making custom-printed athletic clothing and sporting team uniforms, plaintiff adds to blank t-shirts the name of the purchaser's team or special event or other language or images requested by the purchaser. Plaintiff provides its customers with the option of either buying t-shirts that do not also bear the phrase "in the zone" or, in return for a discount in plaintiff's price, buying t-shirts that include phrases such as "In the Zone" and "In the Zone Game Day Apparel" or a distinctive "In the Zone" logo in order to promote plaintiff's athletic clothing and sporting team uniforms. Gardner Depo. at 14, line 15, to 15, line 10, at 84, lines 19-23, at 68, line 19 to 69, line 1, at 69, line 20, to 70, line 1, at 70, lines 7-16, at 70, line 22, to 72, line 16, & at 122, lines 15-25; Anderson Decl. at 5, line 27, to 6, line 11, at 8-9, ¶ 13, & at 18-20, ¶ 22; Ex. 3, 47.

15. Advertising in this fashion rather than by, *e.g.*, television commercials, allows plaintiff, who touts its "$3 custom t-shirts," to offer extremely low prices. Gardner Depo. at ///

6

1  16, lines 2-4, & at 16, line 8, to 17, line 2, at 71, lines 19-22, at 72, lines 10-16; Anderson
2  Decl. at 7-8, ¶ 12, at 19, lines 15-17, & at 20, lines 1-4; Ex. 44.

4      16.     Aside from supplying custom-printed t-shirts and other athletic clothing to
5  organizers of special events, plaintiff sells its "in the zone" custom-printed athletic clothing
6  and sporting team uniforms only through one Internet website, giantsportsfactory.com, which
7  is owned by plaintiff and Mr. Gardner. Gardner Depo. at 12, lines 11-16, & at 13, lines 13-
8  17; Anderson Decl. at 6-7, ¶ 10.

10      17.     Plaintiff's web site giantsportsfactory.com site lists custom-printed t-shirts for
11  $2.69 to $2.99, includes a logo with the words "Home of the $3 T-shirt" and states
12  "SPORTING GOODS 'FACTORY DIRECT' AT VOLUME DISCOUNT PRICES."
13  Anderson Decl. at 7, ¶ 11; Ex. 43.

15      18.     Plaintiff registered the domain name "inthezone.com" but does not use that site
16  to sell its products. Gardner Depo. at 13, lines 13-17, & at 84, lines 19-23; Anderson Decl. at
17  6, line 27, to 7, line 2, & at 8-9, ¶ 13; Ex. 1.

19  3.    THE FACTS BEHIND PLAINTIFF'S ALLEGATION OF USE OF ITS MARK FOR
20        LIVE PERFORMANCES AND RECORDS.

22      (a)    Plaintiff's Supply Of Custom Printed T-Shirts To Organizers Of Special Events
23           Where Music Is Played.

25      19.     Plaintiff initially alleged that "as of the date of the filing of [its] complaint" on
26  February 17, 2004, plaintiff was "expanding" its use of "in the zone" to musical recordings,
27  and on January 15, 2004 plaintiff filed with the United States Patent and Trademark Office
28  (the "USPTO") an "intent to use" application claiming, under penalty of law, a bona fide to

CORRECTED SEPARATE STATEMENT OF MATERIAL FACTS          04CV0326

1  start using "in the zone" in the future as a mark for, among other things, musical recordings
2  and live musical performances. Complaint at 4, ¶ 15, & Ex. A thereto, which includes an
3  online copy of plaintiff's trademark application with no date of "first use"; First Am. Compl.
4  at 4, ¶ 15, & Ex. A thereto; Anderson Decl. at 9-11, ¶¶ 15-17; Ex. 12.

6      20.    In its Second Amended Complaint filed September 12, 2004, however, plaintiff
7  alleged that "as early as 1994" plaintiff has been "expanding" its use of "in the zone" for
8  "musical performances and promotion of musical concerts." Second Am. Compl. at 4, ¶ 15;
9  Third Am. Compl. at 4, ¶ 16 [Same allegation]; Anderson Decl. at 12, ¶ 18.

11     21.    Plaintiff claims that it has used "in the zone" in connection with live musical
12  performances because sometimes music is played at the marathons or other athletic events for
13  which plaintiff has supplied custom-printed t-shirts, and because plaintiff supplied custom-
14  printed t-shirts to the San Diego Symphony from 1998 to 2000 or 2001 and to the organizers
15  of a couple of local jazz festivals. Anderson Decl. at 16-17, ¶ 21.

17     22.    In return for a discount in the price of its custom-printed t-shirts, plaintiff was
18  allowed to include a distinctive "In the Zone" logo on the t-shirts and, at some of these
19  events, to hang a banner promoting its custom-printed athletic clothing and sporting team
20  uniforms. For example, the banner produced by plaintiff in this action states:
21                    "$3 custom t-shirts InTheZone.com"
22  Gardner Depo. at 16, lines 2-4, & at 16, line 8, to 17, line 2, at 68, line 19 to 69, line 1, at 69,
23  line 20, to 70, line 1, at 70, lines 7-16, at 70, line 22, to 72, line 16, & at 122, lines 15-25;
24  Anderson Decl. at 7-8, ¶ 12, & at 18-19, ¶ 22; Ex. 44.
25  ///
26  ///
27  ///
28  ///

CORRECTED SEPARATE STATEMENT OF MATERIAL FACTS          04CV0326

(b)   Plaintiff's "Financial Involvement" In The Mid-1990's In "The Zone," Which Sometimes Offered Live Nighttime Musical Entertainment.

23.   Plaintiff's Mr. Gardner "believe[s]" that plaintiff was "financially involved" from 1993 to 1995 or 1996, in two buildings in Manteno, Illinois, but plaintiff has produced no documents confirming or describing the nature of any such financial involvement. Gardner Depo. at 33, lines 5-11, at 33, line 16, to 34, line 6, at 34, lines 12-23; Anderson Decl. at 12, line 24, to 13, line 12, & at 14, line 28, to 15, line 21.

24.   One of the two Manteno, Illinois buildings included a restaurant, deli and sports bar called The Zone, and the other building included an athletic center where bands sometimes played at night. Gardner Depo. at 33, lines 5-11, at 33, line 16, to 34, line 6, at 34, lines 12-23, at 35, line 23, to 36, line 8, at 40, line 9, to 41, line 3, & at 41, line 21 to 42, line 21; Anderson Decl. at 13, line 13, to 14, line 25; Ex. 7.

25.   Plaintiff has had no financial interest in the Manteno, Illinois buildings since 1995 or 1996, when "the project" was sold. Gardner Depo. at 34, lines 17-23; Anderson Decl. at 15, lines 3-17.

26.   Plaintiff was a suspended corporation throughout the time it had a financial interest in the Manteno, Illinois buildings. Anderson Decl. at 15, ¶ 20; Ex. 45.

(c)   Plaintiff's Recent Discovery That Its Salesman Had Given Away A Homemade CD That Refers To Plaintiff's Trademark For Athletic Clothing.

27.   Bob Ruane, who supplies plaintiff's t-shirts to organizers of special events, and two friends play in the Old Mission Beach Athletic Club's Over the Line annual tournament
///

CORRECTED SEPARATE STATEMENT OF MATERIAL FACTS                    04CV0326

1 | and call their team "Los Mariachis." Gardner Depo. at 16, line 18, to 17, line 2, & at 73, line
2 | 18, to 74, line 14; Anderson Decl. at 8, lines 14-21, at 21, line 23, to 22, line 7.

3

4 |     28.    Plaintiff pays part of Ruane's and his friends' Over the Line tournament
5 | entrance fees and part of the expenses of a "VIP tent" that the team sets up at the tournament.
6 | In return for plaintiff's payments, which total about $100 to $200 each year, plaintiff is
7 | allowed to put up a banner and give away t-shirts at the "VIP tent" to promote its custom-
8 | printed athletic clothing and sporting team uniforms. Gardner Depo. at 76, line 18, to 77, line
9 | 19, at 78, lines 9-16, at 79, lines 10-14, & 80, lines 8-12; Anderson Decl. at 25-26, ¶ 29.

10

11 |     29.    Ruane and his two friends also sometimes sing Mariachi-style songs, including
12 | at the Over the Line tournaments. In 2002 or 2003, Ruane and one of his friends prepared,
13 | apparently on a home computer or at Kinko's, a "Los Mariachis" CD to commemorate the
14 | Old Mission Beach Athletic Club's 50th anniversary. Gardner Depo. at 72, lines 17-19, at 73,
15 | lines 3-4, 12-21, at 81, line 22 to 82, line 18, & at 83, lines 1-3, at 76, lines 2-6, 9-10, at 79,
16 | lines 16-18, & at 83, line 25, to 84, line 6; Anderson Decl. at 21, lines 11-22, at 23-24, ¶ 25,
17 | & at 24, ¶ 27; Ex. 11, 11-A.

18

19 |     30.    The Los Mariachis CD consists of a sound recording of one minute copied from
20 | a Herb Alpert & the Tijuana Brass recording, The Lonely Bull, and five songs sung by Ruane
21 | and his friends. Gardner Depo. at 73, lines 12-21; Anderson Decl. at 21, lines 19-22; Ex. 11-
22 | A; Brizzi Decl. at 2, ¶ 4.

23

24 |     31.    The Los Mariachis CD could not lawfully be sold or distributed to the public
25 | because no license was obtained for the use of the Herb Alpert recording. Anderson Decl. at
26 | 23, line 27, to 24, line 1, & at 24, ¶ 26.

27 | ///

28 | ///

CORRECTED SEPARATE STATEMENT OF MATERIAL FACTS        04CV0326

1    32.    The box for the Los Mariachis CD includes a paper cover and the inside of that
2    cover includes the following: "Congratulations to the 'Old Mission Beach Athletic Club' in
3    Celebration of 50 Grand Years in America's Finest City." Ex. 11, 11-A

5    33.    Ruane gave away 50 or 100 of the Los Mariachis CDs, apparently at the 50th
6    anniversary celebration of the Old Mission Beach Athletic Club. Gardner Depo. at 83, lines
7    7-21, & at 88, lines 5-7, 8-10; Anderson Decl. at 22, line 9, to 23, line 3.

9    34.    The outside and inside of the paper cover of the Los Mariachis CD refers to "In
10   the Zone" being a registered mark, and those references are to plaintiff's registered mark for
11   sportswear. Ex. 11, 11-A, 17, 18; Anderson Decl. at 26-27, ¶ 30.

13   35.    Until August, 2004, plaintiff's Mr. Garner had never heard the CD and did not
14   even know that Ruane had made it. Gardner Depo. at 75, lines 14-16, at 75, line 21, to 76,
15   line 1 & at 86, lines 11-24; Anderson Decl. at 24-25, ¶ 28.

17   36.    Plaintiff is not a record company has not been involved in any other musical
18   recordings. Gardner Depo. at 51, lines 16-18, & at 89, lines 1-4, 8-10, 17-22; Anderson Decl.
19   at 27-28, ¶ 31.

21   4.    THE BRITNEY SPEARS ALBUM, CONCERT TOUR AND FAN T-SHIRT.

23        (a)    Titling The Album "Britney Spears In The Zone."

25   37.    Britney Spears is a professional singer, songwriter, recording artist and actress.
26   Spears Decl. at 2, ¶ 3.
27   ///
28   ///

CORRECTED SEPARATE STATEMENT OF MATERIAL FACTS          04CV0326

38.     Albums and other recordings of Ms. Spears' performances are released by defendant Zomba Recording Corp. ("Zomba"). Spears Decl. at 2, ¶ 4.

39.     In November, 2003, Zomba, using its trade name "Jive," released the Britney Spears In the Zone album (the "Album"). Spears Decl. at 2, ¶ 5; Sassoon Decl. at 5, ¶ 14.

40.     The cover of the Album is completely filed with a close-up photograph of Ms. Spears' face, over which are superimposed the name "Britney Spears" in the top left and the phrase "In the Zone" in the bottom right. The spine and back of the Album packaging bears the Jive logo. Ex. 25-26; Sassoon Decl. at 5, ¶ 12.

41.     Titling the Album was an artistic decision that was made by Ms. Spears. Spears Decl. at 3-4, ¶¶ 7-8.

42.     Ms. Spears was familiar with the phrase "in the zone" as describing a special state in which a person is intently focused and performing at his or highest level. Spears Decl. at 2, lines 22-23.

43.     The phrase "in the zone" describes Ms. Spears' special frame of mind when she is on stage singing and dancing, and feels that only she and the music exist and everyone else has disappeared. Spears Decl. at 3, lines 20-22.

44.     The lyrics of the song "Me Against the Music," which was co-written by Ms. Spears and the first single released from the Album, describes an intense dancer's transcendent state and includes the lyrics:

> "I'm the only one dancin' up in this place
>
> Tonight I'm here
>
> Feel the beat of the drum, gotta get with that bass

CORRECTED SEPARATE STATEMENT OF MATERIAL FACTS                04CV0326

1  I'm up against the speaker, tryin' to take on the music

2  It's like a competition, me against the beat

3  I wanna get in the zone, I wanna get in the zone

4                                        . . .

5  Let me see what you got, don't hesitate

6  I'm up against the speaker, tryin' to take on the music

7  It's like a competition, me against the beat

8  I wanna get in the zone, I wanna get in the zone."

9  Spears Decl. at 2-3, ¶ 6; Ex. 28.

10

11      45.    Ms. Spears decided to use the phrase "Get in the Zone," which appears in the

12  lyrics of "Me Against the Music," in the title of the 2003 Album to describe that special frame

13  of mind when she is performing. Spears Decl. at 3, ¶ 7.

14

15      46.    When a September 16, 2003 press release announced the November 18, 2003

16  release of the Album titled Britney Spears Get in the Zone, Autozone, Inc., which uses the

17  phrase "get in the zone" for stores that sell auto parts, objected to the use of that phrase but

18  did not object to the use of "in the zone" without "get." Sassoon Decl. at 2-3, ¶ 4-5; Ex. 20.

19

20      47.    Zomba denied that Autozone had a basis to object to the Album title and Zomba

21  confirmed, by Internet and SoundScan searches, that the phrases "get in the zone" and "in the

22  zone" were common and, for example, there had been several earlier albums entitled "In the

23  Zone." Sassoon Decl. at 3, ¶¶ 6-8; Ex. 21-23.

24

25      48.    To avoid a dispute and since using "in the zone" instead of "get in the zone"

26  was sufficient for her artistic purposes, Ms. Spears agreed to use the "in the zone" in the

27  Album's title, Britney Spears In the Zone. Spears Decl. at 4, ¶ 8; Sassoon Decl. at 4, ¶ 10.

28  ///

CORRECTED SEPARATE STATEMENT OF MATERIAL FACTS                    04CV0326

1     49.    At no time before the letter dated February 13, 2004 letter from plaintiff's

2 counsel had Ms. Spears or any of the other defendants heard of plaintiff or its products or

3 known of any use by plaintiff of the phrase "in the zone." Spears Decl. at 4, ¶ 9; Sassoon

4 Decl. at 4, ¶ 11; Hunt Decl. at 3, ¶ 8; Seltzer Decl. at 3, ¶ 8; Guida Decl. at 3, ¶ 6; Ginoza

5 Decl. at 4-5, ¶ 13.

6

7     50.    Knowing that album titles are not trademarks, Zomba did not search the

8 USPTO records and even if it had the search would not have revealed a registration of "in the

9 zone" as a mark for phonorecords. Sassoon Decl. at 3-4. ¶ 9.

10

11     51.    The most prominent feature of the Album cover and artwork is the photograph

12 of Ms. Spears; the photograph of her and the name "Britney Spears" are more prominent than

13 the words "In the Zone" that appear in the lower right hand corner of the Album cover; and

14 Zomba's Jive logo appears on the spine and back of the Album. Ex. 25-26; Sassoon Decl. at

15 5, lines 6-8.

16

17     52.    The Album does not include "Lite Breeze, Inc." or "Lite Breeze" or otherwise

18 refer to plaintiff. Ex. 25-26; Sassoon Decl. at 5, lines 5-6.

19

20     53.    Clear Channel and Signatures Records were not involved in the creation, titling

21 or distribution of the Album. Ginoza Decl. at 5, ¶ 5; Hunt Decl. at 4, ¶ 11.

22

23     (b)    <u>The Britney Spears Onyx Hotel Tour, Initially Referred To As "The "Britney</u>

24             <u>Spears In the Zone Tour 2004."</u>

25

26     54.    On or about December 1, 2003, Clear Channel Entertainment issued a press

27 release announcing a concert tour starting March 2, 2004 and featuring Ms. Spears and her

28 performance of songs from the Album. The December 1, 2003 press release referred to the

CORRECTED SEPARATE STATEMENT OF MATERIAL FACTS         04CV0326

tour by reference to the Album title, namely as the Britney Spears In the Zone Tour 2004. Ginoza Decl. at 2, ¶ 5; Ex. 29.

55. From approximately December 10 to 14, 2003, radio and television commercials were broadcast to promote the commencement of ticket sales on December 13-14. Each of these commercials prominently referred to Ms. Spears and referred to the tour as the In the Zone Tour. Ginoza Decl. at 3, ¶¶ 6-7; Ex. 36-37, contained on compact disc submitted with defendants' Motion.

56. The broadcast of these radio and television commercials stopped on December 14, 2003, because of the holiday season and the likelihood that people traveling would not hear or see them and they would be lost in holiday programming. Ginoza Decl. at 3, ¶ 8.

57. Tickets for the tour's concerts went on sale on December 13-14, 2003, and identified the concert as Britney Spears In the Zone Tour 2004. Ginoza Decl. at 3, lines 2-3, & at 4, lines 17-21; Ex. 41.

58. On these tickets, the name "Britney Spears" is in typeface twice as large as the words "In the Zone Tour 2004" and much more prominent than the phrase "In the Zone Tour 2004." Ex. 41.

59. Plaintiff has never used the phrase "In the Zone Tour." Anderson Decl. at 21, ¶ 23.

60. After Ms. Spears chose the title "The Onyx Hotel Tour" as the title of the concert tour, that title was officially announced on January 7, 2004. Spears Decl. at 4, ¶ 10; Sassoon Decl. at 5, ¶ 14; Ex. 27.

///

CORRECTED SEPARATE STATEMENT OF MATERIAL FACTS                    04CV0326

1    61.    On or about January 10, 2004, radio and television commercials began being

2    broadcast again to promote the Britney Spears concert tour.  These commercials refer to the

3    tour as the Onyx Hotel Tour, not the In the Zone Tour.  Ginoza Decl. at 3-4, ¶¶ 9-10; Ex. 38-

4    39, contained in compact disc submitted with defendants' Motion.

5

6    62.    Some, but not all, concert tickets were also changed to refer to the Onyx Hotel

7    Tour 2004 instead of the In the Zone Tour 2004. Ex. 42; Ginoza Decl. at 4, lines 21-25.

8

9    63.    None of the print advertisements and posters for the concert tour used the

10   phrase "in the zone."  Ginoza Decl. at 4, ¶ 11; Ex. 40.

11

12   64.    None of the press releases, radio and television commercials, print

13   advertisements and tickets for the Britney Spears concert tour included "Lite Breeze" or "Lite

14   Breeze" or otherwise referred to plaintiff.  Ex. 20, 27, 36-39, 40-43; Ginoza Decl. at 5, ¶ 14.

15

16   65.    Zomba did not produce any of the concerts in the Britney Spears concert tour

17   and did not receive any portion of the tour revenue.  Sassoon Decl. at 5, ¶ 13.

18

19   66.    Pursuant to a license from Britney Brands, Signatures designed tour

20   merchandise that was sold at concerts in the Britney Spears concert tour.  None of the concert

21   tour merchandise included the phrase "in the zone."  Hunt Decl. at 3, ¶ 7; Seltzer Decl. at 3, ¶

22   10.

23

24   67.    Signatures did not produce any of the concerts in the Britney Spears concert

25   tour and did not receive any portion of the tour's ticket revenue.  Hunt Decl. at 4, ¶ 10.

26   ///

27   ///

28   ///

CORRECTED SEPARATE STATEMENT OF MATERIAL FACTS                   04CV0326

(c)   The Britney Spears "Britney In the Zone" Fan T-Shirt.

68.   Signatures designs and markets music industry "fan appreciation merchandise." Hunt Decl. at 2, lines 14-15.

69.   "Fan appreciation merchandise" means merchandise that has an association with someone or something that has fans and, for example, may display a celebrity's name or likeness to associate the merchandise with the celebrity or the celebrity's accomplishments. Hunt Decl. at 2, lines 15-18.

70.   Signatures specializes in music industry fan appreciation merchandise and focuses on the pop music industry.   Signatures, directly or through sub-licensees, manufactures and distributes fan appreciation merchandise for prominent and well-known celebrities including, for example, The Beatles, The Doors, Madonna, Bruce Springsteen, Rod Steward, Jennifer Lopez and Alicia Keys, as well as Ms. Spears.  Hunt Decl. at 2-3, ¶ 4 & ¶ 5 at lines 4-5.

71.   Signatures does not sell t-shirts or other merchandise for events such as marathons, bicycle races, tournaments or other sporting events, does not manufacture or market sports team t-shirts or other merchandise to teams, coaches or schools and does not have any plans to do so in the future.  Hunt Decl. at 3, ¶ 5.

72.   Signatures' fan appreciation t-shirts generally prominently feature the name and/or likeness of the artist and may include artist logos or other artwork, and is often based on an artist's new or historical album cover artwork. Hunt Decl. at 3, ¶ 6.

///
///
///

CORRECTED SEPARATE STATEMENT OF MATERIAL FACTS                    04CV0326

73. In the latter part of 2003 Signatures created at least 17 different designs for a fan appreciation t-shirt with artwork based on the Britney Spears In the Zone Album cover artwork. Seltzer Decl. at , ¶ 5; Ex. 30.

74. The final design for the fan t-shirt artwork consists of the same photograph of Ms. Spears that appears on the Album but without the photograph being cropped, so that it also shows her neck and shoulders, with starburst patterns over which are superimposed "Britney," in large typeface, and below it "in the zone." Seltzer Decl. at 2-3, ¶ 6; Ex. 31 (actual t-shirt submitted with defendants' Motion) & Ex. 32.

75. Plaintiff admits it would have been difficult to create a t-shirt that referred to the Album without using the Album's title. Gardner Depo. at 109, lines 4-7 & 16-19; Anderson Decl. at 28, ¶ 32.

76. Signatures, like the other defendants, was unaware of plaintiff or its products. Hunt Decl. at 3, ¶ 8; Seltzer Decl. at 3, ¶ 8; Guida Decl. at 3, ¶6.

77. The most prominent feature of the Britney Spears fan appreciation t-shirt that Signatures created is the photograph of Ms. Spears, and the photograph of her and the name "Britney" are more prominent than the words "In the Zone" that appear in smaller typeface below "Britney." Ex. 31-32.

78. The Britney Spears fan t-shirt did not include "Lite Breeze" or "Lite Breeze" or otherwise refer to plaintiff. Ex. 31-32; Seltzer Decl. at 3, ¶ 9.

79. Signatures sold a total of only 491 of the Britney Spears fan appreciation t-shirts with artwork based on the Album's cover: 129 were sold at the Staple Center in Los Angeles, California, on December 5, 2003, when Ms. Spears was a guest during a radio

18

1  station's broadcast from the Staples Center, and no more than 88, net of returns, were sold

2  online and 129, net of returns, were shipped to retailers. Guida Decl. at 2-3, ¶ 5.

3

4      80.    Signatures generally sells its t-shirts for $7 (children's sizes) to $12 (adult long

5  sleeve) at wholesale and $25 to $40 on-site at concert venues and online for standard t-shirts.

6  Signatures sold the Britney Spears fan appreciation t-shirt with artwork based on the Album's

7  cover for $25 at the Staples Center, $19.95 online and approximately $7 to $9 wholesale.

8  Guida Decl. at 2, ¶ 4; Anderson Decl. at 38, ¶ 73.

9

10      81.    All of Signatures' sales of this fan t-shirt ended by March 30, 2004, when

11  Signatures released a modified version with the words "Onyx Hotel" instead of "in the zone."

12  Guida Decl. at 3, lines 6-7.

13

14      82.    Signatures did not sell or offer to sell the Britney Spears fan t-shirt that included

15  the phrase "in the zone" to teams, coaches, schools or organizers of special events such as

16  marathons, cycling races, tournaments or concerts. Hunt Decl. at 3-4, ¶ 9.

17

18      83.    Other than the Britney Spears fan t-shirt that includes the phrase "in the zone,"

19  Signatures has not manufactured, sold or distributed any merchandise that includes the phrase

20  "in the zone." Seltzer Decl. at 4, lines 1-3.

21

22      84.    Signatures has not used "in the zone" as a trademark for its or anyone else's

23  products and does not intend to use "in the zone" as a trademark. Seltzer Decl. at 4, lines 3-8.

24

25      85.    Ms. Spears did not personally participate in the design of the fan t-shirt that

26  included the phrase "in the zone" and did not personally approve the t-shirt's artwork. Spears

27  Decl. at 4, ¶ 11; Seltzer Decl. at 3, lines 10-12.

28  ///

CORRECTED SEPARATE STATEMENT OF MATERIAL FACTS        04CV0326

1     86.     Zomba and Clear Channel had no involvement in the design of the fan t-shirt

2    that included the phrase "in the zone." Seltzer Decl. at 3, lines 12-14; Sassoon Decl. at 5, ¶

3    15; Ginoza Decl. at 5, ¶ 16.

4

5     87.     In their verified response to defendants' requests for production directed to

6    plaintiff and to plaintiff's Mr. Gardner, they stated that they have no documents that support

7    the existence of a likelihood of confusion resulting from defendants' use of the phrase "in the

8    zone." Anderson Decl. at 29-30, ¶ 34; Ex. 48.

9

10                                           Respectfully submitted,

11

12   Dated: December 23, 2004

                                             _____
13                                           Peter J. Anderson, Esq.
                                             LAW OFFICES OF PETER J. ANDERSON
14                                           A Professional Corporation
                                             Attorney for Defendants
15                                           BRITNEY SPEARS,
                                             CLEAR CHANNEL ENTERTAINMENT
16                                           TELEVISION HOLDINGS, INC.,
                                             SIGNATURES NETWORK, INC.,
17                                           ZOMBA RECORDING CORP. and
                                             BRITNEY BRANDS, INC.

18

19

20

21

22

23

24

25

26

27

28

CORRECTED SEPARATE STATEMENT OF MATERIAL FACTS                    04CV0326

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing document was this date served upon all counsel of record by hand delivery of a copy of the same to counsel's last known address as follows:

Kathleen M. Walker, Esq.
Attorney at Law
3421 Thorn Street
San Diego, CA 92104

Santa Monica, California, on December 23, 2004.

_____
Peter J. Anderson, Esq.
LAW OFFICES OF PETER J. ANDERSON
A Professional Corporation
Attorney for Defendants
BRITNEY SPEARS,
CLEAR CHANNEL ENTERTAINMENT
TELEVISION HOLDINGS, INC.,
SIGNATURES NETWORK, INC. and
ZOMBA RECORDING CORPORATION

CORRECTED SEPARATE STATEMENT OF MATERIAL FACTS                    04CV0326